J-S13038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JANEENE S. SHAVERS | : | |
| | : | |
| Appellant | : | No. 2880 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 6, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003151-2021

BEFORE:   NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                         **FILED MAY 9, 2023**

Appellant, Janeene S. Shavers, appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County following her conviction at a non-jury bench trial on one count of harassment, 18 Pa.C.S.A. § 2709(a)(1).  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On December 14, 2020, Police Officer Robert T. Jones of the Chester Housing Police Department in Delaware County, Pennsylvania, filed a criminal complaint charging Appellant, who lived at *** Jeffrey's Street in Chester, Pennsylvania, with crimes in connection with incidents occurring on or about December 12, 2020, at *** Mosley Court in Chester, Pennsylvania. In the affidavit of

---

[*] Former Justice specially assigned to the Superior Court.

probable cause, Officer Jones noted the victim, Iyanna Stokes, reported Appellant had repeatedly sent her text messages threatening to hurt her and indicating she was going to destroy the victim's vehicle. On September 29, 2022, Appellant, who was represented by counsel, proceeded to a bench trial.[1]

At trial, Iyanna Stokes testified she was in a romantic relationship with Appellant for a few months until the relationship became "toxic." N.T., 9/29/22, at 7. Ms. Stokes testified she ended the relationship after an incident where Appellant, who had loaned Ms. Stokes her car, called Ms. Stokes, cursed at her, and demanded she immediately return the car. *Id.* at 8-9. When Ms. Stokes returned to her house with Appellant's vehicle, Appellant and she "got into an argument and an altercation[, which] was the last straw." *Id.* at 9.

Thereafter, Appellant began texting Ms. Stokes, so Ms. Stokes blocked Appellant's telephone number. *Id.* Appellant then began texting from text free apps, but Ms. Stokes never responded because she "was scared." *Id.* Screenshots of Appellant's text messages were submitted into evidence as Commonwealth exhibits.

Commonwealth Exhibit 4 revealed a text message, which Appellant sent to Ms. Stokes on December 11, 2020, at 7:25 p.m., indicating she was going to "smoke" Ms. Stokes, and she should have "smoked" her when she had the

---

[1] Although the criminal complaint charged Appellant with harassment, 18 Pa.C.S.A. § 2709, and stalking, 18 Pa.C.S.A. § 2709.1, the Commonwealth indicated at trial that it was not proceeding on the stalking charge. N.T., 9/29/22, at 5.

chance. **_See_** Commonwealth Exhibit 4. Ms. Stokes testified she understood "smoke" to mean "kill." N.T., 9/29/22, at 11. The text message also indicated that Appellant had observed Ms. Stokes' car in front of Ms. Stokes' residence. **_See_** Commonwealth Exhibit 4. Appellant "thanked" Ms. Stokes for putting the "car back in front of [her] crib" so Appellant could "damage" it such that Ms. Stokes would "never be able to drive that" vehicle again. **_See_** Commonwealth Exhibit 4. In the text message, Appellant informed Ms. Stokes she "hates" her. **_See id._**

Commonwealth Exhibit 3 revealed a text message, which Appellant sent to Ms. Stokes on December 12, 2020, at 1:17 a.m. The text message included a self-photo of Appellant holding a set of keys. **_See_** Commonwealth Exhibit 3. Ms. Stokes testified the keys were a set of spare keys to her apartment. N.T. 9/29/22, at 10.

Ms. Stokes testified that, after she received the text message on December 12, 2020, Appellant arrived at her apartment, banged on the door, and broke her screen door. **_Id._** at 13-15. Ms. Stokes did not let Appellant inside of the residence. **_Id._** After Appellant retreated from her door, Ms. Stokes left her residence for a brief time on December 12, 2020, and when she returned, her apartment "was messed up." **_Id._** at 16. Ms. Stokes testified she telephoned the police on December 12, 2020, to report the incidents. **_Id._** at 15.

On cross-examination, Ms. Stokes testified she never gave Appellant a key to her home. *Id.* at 19. She testified she called the police after Appellant sent her threatening text messages, as well as came to her home uninvited, banged on the door, and broke her screen door on December 12, 2020. *Id.* at 21-23. Defense counsel asked Ms. Stokes whether the police ever generated a report in response to her phone call, and Ms. Stokes testified the police generated a report. *Id.* at 22-23. She noted Appellant was obviously charged with crimes by the police or she would not be testifying in court. *Id.*

At the conclusion of the bench trial, the trial court indicated it would take the matter under consideration and provide a verdict in open court on October 6, 2022. On that date, the trial court found Appellant guilty of one count of summary harassment and imposed a fine of $100.00.

Appellant filed a timely counseled motion for reconsideration, which the trial court denied on October 21, 2022. This timely appeal followed, and the trial court directed Appellant to file a Rule 1925(b) statement.[2] Appellant timely complied, and the trial court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant presents the following sole issue in her "Statement of the Questions Involved" (verbatim):

> Whether the conviction and judgment of sentence for harassment
> must be vacated since the prosecution failed to establish the

_____

[2] We note that, pertaining to the contents of the trial court's order, the order complies in all respects with Pa.R.A.P. 1925(b)(3). Moreover, the certified docket entries contain a notation indicating the order was properly served on Appellant on November 21, 2022.

- 4 -

jurisdiction of the Delaware County Court of Common Pleas to adjudicate this matter where it never proved at trial that any alleged conduct supporting the offense occurred within Pennsylvania's borders?

Appellant's Brief at 4.

Appellant's claim is a challenge to the trial court's subject matter jurisdiction, which presents a question of law "for which our standard of review is *de novo*." **Commonwealth v. Maldonado-Vallespil**, 225 A.3d 159, 161 (Pa.Super. 2019). Our scope of review is plenary. **Id.** This Court may affirm a judgment or verdict for any reason appearing of record. **Commonwealth v. Melvin**, 103 A.3d 1, 19 (Pa.Super. 2014).

Relevantly, this Court has held:

Section 102 of the Crimes Code provides in pertinent part:

### § 102. Territorial applicability

(a) General rule.—Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by [her] own conduct or the conduct of another for which [s]he is legally accountable if either:

(1) the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth[.]

18 Pa.C.S.A. § 102(a)(1).[3]

***

---

[3] "Although, by its terms, the statute refers to the Commonwealth of Pennsylvania for purposes of applying territorially the [criminal laws], the same considerations are applicable to determine in which county a [criminal] case is to be tried." **Commonwealth v. Bradfield**, 508 A.2d 568, 571 (Pa.Super. 1986).

> For a county to exercise jurisdiction over a criminal case, an overt act involved in the crime must have occurred within that county. **Commonwealth v. Bradfield**, 508 A.2d 568, 571 (Pa.Super. 1986)[(citation omitted)]. "While the Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, it may rely upon circumstantial evidence to meet its burden." [**Id.**]

**Commonwealth v. Passmore**, 857 A.2d 697, 709 (Pa.Super. 2004) (citation omitted) (bold in original) (footnote added).

Appellant's sole argument is the Commonwealth failed to prove the instant crime of harassment occurred within Pennsylvania's borders. Appellant's Brief at 10. In support, she cites **Maldonado-Vallespil**, **supra**, in which this Court held the record was silent regarding the location where the theft of tools stored in a vehicle occurred, and, thus, the Commonwealth failed to establish that any element of the crime of receiving stolen property occurred in Pennsylvania. **Id.** at 162. Indeed, the Commonwealth conceded as much in **Maldonado-Vallespil**.

Appellant posits that, similar to **Maldonado-Vallespil**, the instant record is devoid of evidence establishing that she committed the crime of harassment against Ms. Stokes within the borders of Pennsylvania. Appellant's Brief at 13. Accordingly, she posits "[a]ny conclusion that the Delaware County Court of Common Pleas had jurisdiction over [Appellant's] case would improperly rest on 'conjecture and speculation.'" **Id.**

The trial court rejected Appellant's argument and relevantly indicated the following:

- 6 -

[J]urisdiction in this matter was established by the record as a whole and through circumstantial evidence. The criminal complaint, which is part of the official court record, contains Appellant's address, as well as the victim's address, both of which are in Chester, Delaware County, Pennsylvania. **See** Police Criminal Complaint, dated 12/16/20. The [criminal] complaint was completed by Officer Robert T. Jones of the Chester Housing Police Department alleging Appellant violated the penal laws of the Commonwealth of Pennsylvania at [***] Mosley Court Chester, PA, on December 12, 2020. Th[e] [trial] court can take judicial notice that Chester Housing Police Department responds to crimes that occur in their jurisdiction. This information, combined with Ms. Stokes' testimony, establishes that the crime of harassment occurred in Delaware County. Ms. Stokes testified that she received the threatening texts from Appellant, who then showed up at her house on December 12, 2020, yelling profanities at her and banging on her door. Furthermore, Ms. Stokes testified that she called the police after Appellant showed up at her home. The agency who issued the summons in this matter was the Chester Housing Police Department, which is located in Delaware County and has special jurisdiction only in Chester[, Pennsylvania]. As such, [the trial] court was satisfied that the crime of harassment occurred in Delaware County thereby establishing jurisdiction.

Trial Court Opinion, filed 1/3/23, at 6-7.

We agree with the trial court's sound reasoning. In the case *sub judice*, unlike in **_Maldonado-Vallespil_**, **_supra_**, the record is not silent concerning where Appellant's crime occurred. Here the trial court judge, sitting as the finder of fact, examined the criminal complaint,[4] heard the victim's testimony,

---

[4] To the extent Appellant suggests the trial court judge was not permitted to consider the criminal complaint as evidence since it was not admitted as a trial exhibit, we note Appellant did not present this issue in her court-ordered Rule 1925(b) statement. Thus, the evidentiary issue is waived. **See** Pa.R.A.P. 1925(b)(4)(vii).

- 7 -

and reviewed the exhibits. Based thereon, the trial court concluded Appellant, as well as the victim, reside at separate addresses in Delaware County. Moreover, the trial court properly concluded the evidence, including the circumstantial evidence, sufficiently supports the holding that Appellant's harassment of Ms. Stokes occurred in Delaware County.

Relevantly, the victim testified that, in the December 11, 2020, text message, Appellant indicated she had observed Ms. Stokes' vehicle in front of her residence, she was going to damage the vehicle, and she was going to "smoke" Ms. Stokes. *See* Commonwealth Exhibit 4. Further, in the December 12, 2020, text message, Appellant included a self-photo of herself holding Ms. Stokes' spare apartment keys. Later that day, Appellant appeared at Ms. Stokes' front door, banged on it, and broke the screen door. After Ms. Stokes left the residence, she returned to a "messed up" home. N.T., 9/29/22, at 16. As indicated *supra*, the criminal complaint listed the criminal incident as occurring at \*\*\* Mosley Court in Chester, Pennsylvania, and the trial court was free to conclude this was the victim's address.

Ms. Stokes confirmed she telephoned the police on December 12, 2020, and the criminal complaint reveals Officer Jones of the Chester Housing Police Department responded. The trial court drew the reasonable inference that Officer Jones responded to crimes that occurred within his lawful jurisdiction. ***See Passmore***, ***supra***. ***See also Commonwealth v. Schestok***, No. 179

EDA 2020, 241 A.3d 408 (Pa.Super. filed 10/9/20) (unpublished memorandum).[5]

Accordingly, we find no merit to Appellant's claim, and we affirm the judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2023

---

[5] We note Pa.R.A.P. 126(b), amended effective, May 1, 2019, provides that non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.